# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CATHERINE A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 19-1081-JWL |
| ANDREW M. SAUL,[2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c(a) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegation of disabling back pain, the court ORDERS that the final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively applied for SSI on October 26, 2015. (R. 13, 170-76). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erroneously evaluated her allegations of disabling back pain and did not account for all the limitations opined by her psychologist, Dr. Goodman.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Remand is necessary for the Commissioner to properly explain his evaluation of Plaintiff's allegations of disabling pain. Consequently, it will be necessary for the Commissioner to reassess RFC on remand which will include reevaluating the medical opinions. Plaintiff may make her arguments regarding Dr. Goodman's opinion on remand and the court will not provide an advisory opinion in that regard.

## II. Discussion

Plaintiff claims the ALJ failed to provide good reasons supported by the record evidence to discount her allegations of disabling back pain. Plaintiff argues the ALJ

recognized Plaintiff had a history of spinal problems before the period of adjudication, but the ALJ mischaracterized the objective medical evidence regarding Plaintiff's current problems. (Pl. Br. 16-17). She argues the ALJ relied on Plaintiff's reports of improvement but did not discuss the qualifications and limitations on those reports. Id. at 17. Plaintiff claims the ALJ picked and chose among the evidence, using evidence favorable to her decisions but ignoring contrary evidence. Id. at 18. Finally, Plaintiff points out that she was diagnosed with somatization disorder and the ALJ found it was a severe impairment but did not explain how that diagnosis impacted the ALJ's finding regarding Plaintiff's allegation of disabling pain. Id. at 19.

The Commissioner argues the ALJ properly discounted Plaintiff's allegations of disabling limitations from her back pain. He argues the ALJ's findings are supported by record evidence of normal examination findings, positive Waddell signs, and Plaintiff's report of fifty percent reduction in back pain after surgery. (Comm'r Br. 5-7). He argues that an ALJ need not discuss everything in the record and Plaintiff has not explained how the unexplained evidence is material to the decision. Id. at 7. He argues that Plaintiff did not seek treatment for her pain between November 2015 and 2017 which along with her statement that she was ok until recently supports the ALJ's finding. Id. at 7-8. He points out positive Waddell signs could be consistent with exaggeration of symptoms. Id. at 8.

In her Reply Brief, Plaintiff again asserts that the central issue regarding her allegations of symptoms is that the ALJ's reasons for discounting the allegations are not supported by the evidence. She argues that the "findings on the most recent CT scan that were not addressed by the ALJ refute [the ALJ's] conclusion that [Plaintiff']s allegations

5

of pain were not consistent with the diagnostic evidence." (Reply 2). She argues that although there was evidence of relatively good examination results, there was other evidence supporting Plaintiff's allegations which were not discussed by the ALJ. Id. 3. Finally, Plaintiff argues that in a case such as this where the ALJ finds a severe impairment of somatization disorder, evidence of positive Waddell signs must be considered in that light recognizing that they may be evidence of somatization rather than merely exaggeration. Id. at 3-4.

### A. Standard for Evaluating Plaintiff's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 416.929(c)(3). These factors include:

6

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the courts: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii).

An ALJ's evaluation of a claimant's allegations of symptoms is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent

---

[3] Luna, Thompson, Kepler, and other cases cited below were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5882 (Jan. 18, 2017) (codified at 20 C.F.R. § 416.929). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on August 15, 2018, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

7

v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

### B. The ALJ's Evaluation of Plaintiff's Allegations of Symptoms

Beginning her RFC assessment, the ALJ explained that she had considered Plaintiff's allegations of "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (R. 18). She summarized the regulatory standard she applied and summarized Plaintiff's allegations of limiting symptoms. Id. at 18-19. She noted Plaintiff's claim chronic lower back pain limits her ability to lift, allows her to stand only ten minutes at a time, and permits her to walk a block before needing to sit and rest. Id. at 19. She found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

The ALJ then summarized the evidence relevant to Plaintiff's low back pain:

> The claimant does have physical and mental impairments which certainly warrant some work restrictions. The evidence, however, does not support her allegations of debilitating functional limitations. On the contrary, the

8

evidence indicates that, despite her impairments, the claimant retains the ability to perform a range of sedentary exertional work that is consistent with the above residual functional capacity assessment.

The claimant has a history of spinal problems that substantially predates the period of adjudication. The claimant had a microdiscectomy at L4-S1 in December of 2010 (Exhibit 4F at 19[, R. 365]). She underwent a left-sided L4-5 hemilaminectomy and microdiscectomy on February 3, 2012, to releive [sic] left lower extremity radiculopathy caused by a herniated disc (Exhibit 1F at 9[, R. 298]). On June 7, 2013, she underwent surgery at L4-5 to relive bilateral L5 radiculopathy due to a second herniated disc causing central canal stenosis (Exhibit 1F at 25[, R. 314]). Unfortunately, the claimant's back pain and radiculopathy persisted, and she required a fusion procedure, from L4 through S1, on February 11, 2014 (Exhibit 4F at 3, 27[, R. 349, 373]). An MRI of the claimant's lumbar spine, performed in August of 2014, found her fusion to be intact, and noted appropriate alignment, with no indications of hardware malfunction (Exhibit 5F at 2[, R. 388]). X-rays performed in July of 2015 show similar findings (Exhibit 8F at 105[, R. 1103]). A recent CT scan, performed in August of 2017, notes a bulging disc at L3-4, but there is no indication of nerve root impingement (Exhibit 29F at 30[, R. 1735]).

Since her 2014 fusion surgery, the claimant has continued to complain of lower back pain and lumbar radiculopathy. She has, however, reported that her pain was improved by this surgery, by approximately 50 percent (Exhibit 4F at 3[, R. 349]). Despite her complaints of pain and limited mobility, the claimant's physical examination findings have actually been relatively good. The claimant does exhibit muscle spasms in her lower back, with restricted lumbar flexion (Exhibit 8F at 169[, R. 1167]). However, she ambulates with normal gait and station, and does not require the use of an assistive device for mobility (Exhibit 8F at 159, 182, 252[, R. 1157, 1180, 1250]). The claimant, moreover, exhibits no sensory, motor, or reflex deficits in her lower extremities (Exhibit 8F at 182, 220, 252[, R. 1180, 1218, 1250]). The claimant has reported right-sided radicular pain, but has indicated that this occurs only "occasionally" (Exhibit 8F at 162[, R. 1160]). A recent examination noted positive straight leg raising on the right, but the examiner also noted positive Waddell's signs, and postulated that the claimant's pain may have a somatic component (Exhibit 30F at 7, 10, 15[, R. 1803, 1806, 1811]).

The claimant's lower back pain is exacerbated, to some degree, by her weight (Exhibit 8F at 179[, R. 1177]). The record indicates that the claimant measures 67 inches tall, and weighs 245 pounds, resulting in a

> body mass index (BMI) of 38.4 (Exhibit 3F at 2[, R. 342]). BMI is a
> measure of an individual's obesity. Indexes [sic] over 29 are considered to
> be in the obese range. An individual may have limitations in any of the
> exertional functions, postural functions, in her ability to manipulate objects,
> or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he
> combined effects of obesity with other impairments can be greater than the
> effects of each of the impairments considered separately" (SSR 02-01p).
> The effects of the claimant's obesity have been considered in determining
> her residual functional capacity. As noted above, however, despite her
> obesity, the claimant's physical examination findings have been relatively
> good.

(R. 19-20).

### C. Analysis

As quoted above, the ALJ summarized much of the evidence related to Plaintiff's back problems and backpain over time and recognized that her pain is exacerbated by obesity. She found Plaintiff's physical restrictions "warrant some work restrictions" but "the evidence indicates that, despite her impairments, the claimant retains the ability to perform a range of sedentary exertional work that is consistent with the [ALJ's] residual functional capacity assessment." Id. at 19.

The ALJ recognized Plaintiff's extensive surgical treatments for low back problems beginning in December 2010 and culminating after three surgeries with a fourth—an L4-S1 fusion surgery in February 2014. Id. 19-20. Plaintiff objects to the ALJ's characterization that a 2017 CT scan thereafter showed "a bulging disc at L3-4, but there is no indication of nerve root impingement." Id. at 20. What is missing from the ALJ's summary is the report's findings of at "least a mild to moderate degree of central canal stenosis, [and] neural foraminal narrowing at the L5-S1 level bilaterally and at the L4-5 level on the left." The court agrees with Plaintiff that in a case such as this where

10

the claimant has an extensive history of low back problems requiring multiple surgical interventions over four of the previous seven years, central canal stenosis and foraminal narrowing appearing on a CT scan are relevant to evaluation of Plaintiff's condition—particularly of her allegations of chronic low back pain. This is especially true when the ALJ asserted "there is no indication of nerve root impingement," a fact which is apparently true because the report does not state anything about nerve root impingement, but it tends to imply facts contrary to what the report actually <u>states</u> about stenosis and foraminal narrowing. Moreover, the fact the disc bulge at L3-4 results in central canal stenosis seems to be very relevant given the June 2013 surgery was "secondary to a large L4-5 herniated nucleus pulposus with <u>central canal stenosis</u>." (R. 314) (emphasis added).

The ALJ recognized that after her 2014 surgery Plaintiff continued to complain of back pain and limited mobility, that on September 10, 2015 examination showed bilateral muscle spasm and limited lumbar flexion, and that Plaintiff recently had positive straight leg raising, and has reported right-sided radicular pain. (R. 20), <u>see also</u> (R. 1160, 1167, 1803, 1806, 1811). With these findings, the ALJ also stated Plaintiff's "pain was improved by [the 2014] surgery, by approximately 50 percent," "physical examination findings have actually been relatively good," "she ambulates with normal gait and station, and does not require the use of an assistive device, … exhibits no sensory, motor, or reflex deficits in her lower extremities," and Plaintiff indicated that her right-sided radicular pain occurs only occasionally. <u>Id.</u> The ALJ's findings in this regard, positive and negative, are supported by the evidence. What is missing in her analysis, however, is an explanation how the positive findings demonstrate that the negative findings do not

11

result in disabling low back pain. Moreover, as Plaintiff points out, she was referred for pain management after her 2014 spinal fusion surgery, and the ALJ's decision says nothing about this referral. (R. 1155-80).

The ALJ noted evidence showing positive Waddell's signs and that the examiner "postulated that the claimant's pain may have a somatic component." (R. 20). In his Brief, the Commissioner argues the ALJ found Plaintiff's allegations of back pain undermined by "evidence of potential exaggeration" (Comm'r Br. 1), explains that positive Waddell signs suggest Plaintiff "might be exaggerating her symptoms," and that "[t]he ALJ reasonably considered this evidence in discounting Plaintiff's subjective complaints of disabling back pain." Id. at 6. While the ALJ clearly considered this evidence when evaluating Plaintiff's allegations, she did not state that she considered it evidence Plaintiff was exaggerating. In fact, in her evaluation of Plaintiff's allegations immediately after reporting the positive Waddell signs she noted the examiner's statement that Plaintiff's pain may have a somatic component. And, at step two she found that "somatization disorder" is one of Plaintiff's severe impairments. (R. 15). As Plaintiff points out, somatic pain can be as "real," hence as disabling, as pain for which there is a physical basis. (Reply 3-4). Because the ALJ did not explain how this somatic component affected her analysis and why, the court is unable to determine whether her analysis is supported by the evidence.

Finally, the ALJ acknowledged that Plaintiff's weight exacerbated her back pain, stated that the ALJ had considered obesity in assessing RFC, and that "the claimant's physical examination findings have been relatively good." Once again, however, she did

not explain how this fact demonstrated that Plaintiff's back pain was less than disabling. The court is aware that an ALJ's findings regarding a claimant's allegations of symptoms are generally treated as binding on review. Talley, 908 F.2d at 587; Broadbent, 698 F.2d at 413. But, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same). Here, although there is abundant evidence cited, the ALJ has not explained how the evidence supports the conclusion reached, leaving merely a conclusion in the guise of findings.

The court does not mean to imply a decision. In fact, were there only one or two explanations unclear as discussed above and were it possible to discern the way the ALJ viewed the evidence in this case, the court would affirm the analysis if supported by the evidence. But in the circumstances presented here, the court would need to do its own evaluation of the evidence in the first instance, and that it may not do. Therefore, remand is necessary for the Commissioner to explain how the evidence leads to his findings.

**IT IS THEREFORE ORDERED** that the final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated March 2, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

13